# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| ANGELA VANN, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-12-3566 |
| | § | |
| MATTRESS FIRM, INC., | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION & ORDER

Pending before the court is defendant Mattress Firm, Inc.'s motion for summary judgment. Dkt. 17. Mattress Firm moves for summary judgment on plaintiff's age, race, and gender discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Texas Commission on Human Rights Act ("TCHRA"), and the Age Discrimination in Employment Act of 1967 ("ADEA"), as well as her overtime claims under the Fair Labor Standards Act ("FLSA"). Upon consideration of the parties' briefing, summary judgment record, and applicable law, the court is of the opinion that the motion should be **GRANTED**.

## I. BACKGROUND

Mattress Firm sells mattresses, beds, and other bedding products to the public.[1] In the operation of its business, Mattress Firm routinely transfers employees and promotes or demotes employees based on the district manager's monthly review of an employee's sales performance, store execution, and teamwork skills, and Mattress Firm's staffing needs.[2] The primary responsibility of

---

[1]  Dkt. 17, Ex. A, Declaration of Ken Murphy at ¶3.

[2]  *Id.* at Ex. D, Declaration of Carrie Ibrahim ("Ibrahim Decl.") at ¶¶3-4; Dkt. 33, Ex. B, Deposition of Keith Gullo ("Gullo Dep.") at p. 200.

assistant store managers and store managers is to sell merchandise to Mattress Firm's customers.[3]
Additionally, managers are expected to maintain the store's appearance and train sales associates.[4]
Mattress Firm evaluates a manager's performance on several store indicators, included a manager's
percentage to budget, individual sales compared to the sales of employees in a district, and overall
sales at a particular store.[5]  Store managers are also evaluated on their execution of store operations,
including store cleanliness, proper advertisement and merchandise placement, and the ability to
effectively handle customer service issues.[6]

Mattress Firm hired plaintiff, Angela Vann, in July 2005 as a manager-on-duty, an entry-level
sales position.[7]  Vann was 47 years old at the time she was hired.[8]  Within four months, Vann was
promoted to store manager at a small store in Houston.[9]  In early 2007, Vann was transferred as the
store manager to a large store at Hedwig Village because of her high sales volume.[10]  At Hedwig
Village, Vann allegedly had difficulty working well with the other sales associates.[11] Specifically,

---

[3]  Dkt. 17, Ex. B, Deposition of Angela Vann ("Vann Dep.") at p. 57.

[4]  Gullo Dep. at pp. 187-88.

[5]  Dkt. 17, Ex. E, Deposition of Tera Starr ("Starr Dep.") at pp. 32-33.

[6]  *Id.* at p. 33.

[7]  Vann Dep. at pp. 41-42.

[8]  *Id.* at p. 44.

[9]  *Id.* at p. 45.  Mattress Firm stores are classified as small, medium, and large based on annual sales
volume.  Gullo Dep. at pp. 57-58.

[10]  Vann Dep. at p. 47; Gullo Dep. at p. 48.

[11]  *Id.* at pp. 154-55.

2

sales associates complained that she would fight over customers and assist customers out of turn.[12]

Vann's personal sales remained high, however, the location's overall performance declined.[13]

Vann's District Manager at the time, Keith Gullo, demoted Vann to assistant store manager of the

Hedwig Village store in September 2008 to try to reverse the declining sales at this location.[14]

Vann was promoted back to store manager in November 2008 and transferred to another

large store on Westheimer.[15]   Mattress Firm maintains that this location experienced the same

problems as the Hedwig Village store under Vann's management.[16]  Her sales were high, but the

store's overall performance suffered.[17]  Vann was transferred to a different location, and again, the

employees complained about her lack of teamwork and aggressive behavior taking customers out

of turn.[18]   Vann was demoted, promoted, and transferred additional times until March 2010, in

response to Vann's request, Mattress Firm transferred her back to the Hedwig Village location as

store manager.[19]

According to Vann's new District Manager, Tera Starr, her performance problems persisted.[20]

Starr counseled Vann about the proper management of the store, including cleanliness and

---

[12]  *Id.* at pp. 153-54, 157-58.

[13]  *Id.* at pp. 145-46.

[14]  *Id.* at p. 145.

[15]  *Id.* at p. 148.

[16]  *Id.* at p. 152.

[17]  *Id.*

[18]  *Id.* at pp. 153-54.

[19]  Vann Dep. at p. 135; Gullo Dep. at p. 164.

[20]  Starr Dep. at p. 39.

organization.[21]  However, Vann failed to improve, so Starr demoted her from manager to assistant manager in October 2010.[22]  Sales associates continued to complain that Vann did not help around the store, assisted customers out of turn, and failed to train new employees.[23]  In July 2011, Starr transferred Vann to the Fry Road store as assistant manager because of the ongoing conflict with the sales associates at the Hedwig Village location.[24]  Vann's position as assistant manager was filled by another female, Debbie Hayes.[25]  According to Mattress Firm, the Fry Road store was comparable to Hedwig Village.  It was a large store with a clearance center.[26]

In November 2011, District Manager Chris Brown took over the region containing the Fry Road store.  He counseled Vann and Robert Rathgeber, the store manager, about the store's low sales and index-to-budget rankings.[27]  He warned them if the numbers did not improve, he would transfer them to other stores.[28]  When the numbers did not improve, Brown transferred Vann and Rathgeber on November 30, 2011.[29]  Vann was reassigned to a medium store at Dairy Ashford[30] as store

---

[21]  *Id.*

[22]  Ibrahim Decl. at ¶8.

[23]  Starr Dep. at pp. 42-44; Vann Dep. at p. 152.

[24]  Starr Dep. at p. 41.

[25]  Ibrahim Decl at ¶8; Vann Dep. at p. 156.

[26]  Starr Dep. at p. 47.

[27]  Dkt. 33, Ex. E, Deposition of Chris Brown ("Brown Dep.") at pp. 62-63; Vann Dep. at p. 177.

[28]  *Id.*

[29]  Brown Dep. at p. 59.

[30]  Vann contends Dairy Ashford was a small store.  Dkt. 33, Ex. A.

manager.[31]  According to Mattress Firm, at the time of plaintiff's transfer, the Dairy Ashford location was performing better than the Fry Road location.[32]

On December 12, 2011, Vann was terminated following a customer complaint. The complaint stemmed from a transaction on September 4, 2011, when Vann sold a mattress set to a customer at the Fry Road store.[33]  Vann did not charge the standard $79 delivery fee,[34] which was within her discretion.[35]  However, Vann claims that the customer agreed to pay the delivery fee, and she only inadvertently failed to charge the customer.[36]  So, after finalizing the sale, Vann admitted that she changed the invoice to add the delivery charge.[37]  Vann stated it was within the authority of the salesperson to revise the invoice if there was a mistake.[38]  When the customer returned to another store in December 2011 to pay off her remaining balance, the customer learned that her remaining balance included the delivery fee.[39]  The customer called Vann to complain about the discrepancy.[40]  She attempted to renegotiate the sale by offering the customer a different box spring or requesting

---

[31]  Brown Dep. at p. 62; Vann Dep. at p. 161.

[32]  Brown Dep. at p. 61.

[33]  Vann Dep. at p. 165.

[34]  *Id.* at p. 171; Dkt. 17, Ex. G.

[35]  Vann Dep. at p. 166.

[36]  Dkt. 33, Ex. A; Vann Dep. at p. 171.

[37]  *Id.* at p. 173.

[38]  Dkt. 33, Ex. A.

[39]  Brown Dep. at pp. 76-77.

[40]  Vann Dep. at pp. 184, 188.

the customer pay only a portion of the delivery fee.[41]  The customer rejected Vann's proposal and complained to the District Manager about Vann's attempt to renegotiate the terms of the sale.[42] Vann admitted to Brown that she added the fee following the sale and attempted to renegotiate the cost of delivery.[43]  According to Mattress Firm, payment of the delivery fee would have increased Vann's commission.[44]

Following an investigation into the incident, Vann was terminated for unethical and unprofessional behavior related to this transaction.  Vann claims the so-called investigation was inadequate because there were three sales associates that witnessed the customer agree to pay the delivery charge, but they were never interviewed.[45]  Chris Brown testified that he did not speak to these employees because Vann had already admitted to changing the invoice.[46]  Erin Camp, a female, replaced Vann as assistant store manager at the Dairy Ashford store.[47]

Vann filed a charge of discrimination with the EEOC on December 20, 2011, alleging gender, race, and age discrimination.[48]  Vann alleged that she was transferred more frequently than younger, white male colleagues.[49]  Vann also claimed that she was terminated for conduct for which

---

[41]  *Id.*

[42]  Vann Dep. at p. 188.

[43]  Brown Dep. at pp. 79-80.

[44]  Vann Dep. at pp. 189-90.

[45]  Dkt. 33, Ex. E at p. 79.

[46]  Brown Dep. at 79.

[47]  Ibrahim Decl. at ¶12.

[48]  Dkt. 17, Ex. H.

[49]  Vann Dep. at pp. 203-04.

other sales associates only received verbal reprimands.[50]  For example, Vann noted David Pratt and William Valkemper failed to follow policy by excluding free merchandise from customer sales receipts, and they were not terminated.[51]  Vann, however, could not identify any employee who received a customer complaint after changing a sales invoice, without the customer's knowledge, to attempt to add additional fees.[52]

On October 16, 2012, Vann filed suit against Mattress Firm, alleging gender and race discrimination in violation of Title VII and the TCHRA and age discrimination in violation of the ADEA.  Additionally, Vann claims she was denied overtime pay in violation of the FLSA.  Mattress Firm argues it is entitled to summary judgment on all of Vann's claims because the majority of the alleged adverse actions cited by Vann are time-barred.  For those employment decisions that are not time-barred, Mattress Firm maintains it had a legitimate, non-discriminatory reason for transferring plaintiff and terminating her employment.  Specifically, Mattress Firm maintains that Vann demonstrated poor management skills and acted unprofessionally with one customer's transaction. Finally, Mattress Firm contends that Vann is not entitled to overtime pay because she was exempt under the FLSA provisions for retail establishment employees.[53]

## II. Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see*

---

[50]  *Id.* at pp. 198-99.

[51]  *Id.* at pp. 123-24, 198.

[52]  *Id.* at p. 201.

[53]  Vann abandons her FLSA claim.  Dkt. 33 at 9 n.15.  Therefore, the court will not address the merits of Mattress Firm's arguments relating to plaintiff's claim for overtime pay.

*also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  The moving party bears the initial burden of informing the court of evidence, if any, that demonstrates the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine dispute of material fact.  *Id.* at 322.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005).  A dispute is "material" if its resolution could affect the outcome of the action.  *Anderson*, 477 U.S. at 248.  The substantive law determines the facts which are material in each case.  Lastly, in determining whether a genuine dispute of material fact exists, the court views the evidence and draws inferences in the light most favorable to the nonmoving party.  *Id.* at 255; *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

### III.  ANALYSIS

#### A.    Timeliness

Mattress Firm argues that the majority of transfers and demotions about which Vann complains, dating back to 2008, are time-barred.  Mattress Firm asserts that the only timely claims at issue in this suit are the two transfers to the Fry Road and Dairy Ashford stores and Vann's termination.  In response, Vann argues that these past acts show a continuing violation and may be considered despite falling outside of the limitations period.  Alternatively, Vann asserts that her transfers prior to Fry Road may be time-barred for purposes of recovery, but that they may be considered relevant evidence of Mattress Firm's discriminatory intent.

Generally, Title VII precludes recovery for discrete acts of discrimination that occur outside of the statutory time period.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 122 S. Ct. 2061 (2002).  A discrete discriminatory act occurs on the "day it 'happened.'"  *Id.* at 110.  Asserting claims of discrete discriminatory acts that fall within the statutory time period will not revive acts that fall outside of the time period.  *Id.* at 112-13.  However, the statute does not bar an employee from "using the prior acts as background evidence in support of a timely claim."  *Id.* at 113; *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

The Fifth Circuit has recognized an equitable exception, which will "extend[] the limitations period on otherwise time-barred claims only when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts."  *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004).  Otherwise known as the continuing violation doctrine, a plaintiff may be allowed to recover for acts outside of the statutory limitation period, if the plaintiff can show "a series of related acts, one or more of which fall within the limitations period."  *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998).  Plaintiff must show "an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action."  *Id.* at 239 (internal citation omitted).  In this instance, the filing period will not begin to run "until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated."  *Id.* at 238 (quoting *Messer v. Meno*, 130 F.3d 130, 134-35 (5th Cir. 1997)).

The continuing violation doctrine generally applies to hostile work environment claims, as opposed to intentional acts of discrimination, like demotion or failure to promote.  *Id.*  For instance, in *Huckabay*, the Fifth Circuit distinguished a discrete employment action, such as a demotion, from

9

the "day-to-day harassment that makes [the] workplace a hostile environment." *Id.* at 239-40. Plaintiff's demotion and failure to promote were isolated, discrete occurrences "that should put an employee on notice that a cause of action has accrued" and are separate from "the continuously violative hostile environment." *Id.* at 240.

Vann cites to discrete demotion and transfer decisions dating back to 2008.  She maintains that from 2008 to her termination, she was repeatedly and involuntarily transferred to lower performing stores or demoted and replaced by younger, less-qualified  individuals outside of her protected class.  She claims she was reassigned and replaced eight times over a two year period.

Under current Fifth Circuit precedent, the acts Vann complains of were discrete employment decisions.  Transfers and demotions are the type of actions that trigger a duty in Vann to assert her rights if she believed the acts were discriminatory.  Each demotion or transfer was sufficient on its own, in terms of Vann's arguments regarding lower income potential and losing client development opportunities, to put Vann on notice of any potential discriminatory effect.  Because Vann's transfers, demotions, and termination constituted discrete acts, rather than a continuing violation, any adverse employment action occurring prior to 300 days before the filing of her EEOC complaint is time-barred and cannot be considered for purposes of Matterss Firm's liability.  Such employment decisions will only be considered as relevant to the discriminatory intent of Mattress Firm with respect to Vann's timely claims.

Plaintiffs in Texas have 300 days from the date of the alleged unlawful practice to file a charge of discrimination with the EEOC or they "lose the ability to recover for it." *Morgan*, 536 U.S. at 110; 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d) (ADEA); Tᴇx. Lᴀʙ. Cᴏᴅᴇ

§ 21.202 (requiring plaintiff to file within 180 days of the alleged unlawful practice).[54]   In this case,

Vann filed her EEOC complaint on December 20, 2011.[55]   Consequently, all acts that occurred

before February 23, 2011–300 days before December 20, 2011–are time barred.   After reviewing the

record of Vann's employment history with Mattress Firm, only the transfers to the Fry Road and

Dairy Ashford stores and Vann's termination fall within the limitations period.

### B.    Discrimination

Mattress Firm moves for summary judgment on Vann's claims of age, race, and gender

discrimination under Title VII[56] and the ADEA.   The court considers each set of claims under both

anti-discrimination statutes, which require similar analyses.   Title VII prohibits employers from

discriminating based on an individual's race, color, religion, sex, or national origin.   42 U.S.C. §

2000e–2(a).   The ADEA makes it "unlawful for an employer to fail or refuse to hire or to discharge

any individual or otherwise discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's age."   29 U.S.C. §

623(a)(1).   Where, as here, a plaintiff only relies on circumstantial evidence, we apply the framework

from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), for both Title VII

and ADEA claims.   *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (Title

VII); *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (ADEA).   Pursuant to this

---

[54]   While the TCHRA requires plaintiff to file a charge of discrimination with the EEOC or the Texas
Commission on Human Rights within 180 days of the discriminatory act, TEX. LAB. CODE § 21.202(a),
neither party contests that the default limitations period in this case is 300 days.

[55]   Dkt. 17, Ex. H.

[56]   The  Texas Labor Code models the applicable standards for employment discrimination claims
after federal Title VII law.   *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 n.25 (Tex. 2010);
*Shackelford v. Deloitte & Touche, L.L.P.*, 190 F.3d 398, 404 n.2 (5th Cir. 1999) ("[T]he law governing claims
under the TCHRA and Title VII is identical.").

framework, plaintiff must first make a *prima facie* case of discrimination based on age, race, and gender. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011); *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004). To establish a *prima facie* case, plaintiff must show that she: (1) was a member of a protected group; (2) was qualified for the position in question; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside of her protected class, or was treated less favorably than similarly situated persons outside of her protected class. *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

Once the plaintiff makes this showing, the burden of production shifts to the defendant-employer to identify a legitimate, non-discriminatory reason for the adverse employment action. *Johnson v. Louisiana*, 351 F.3d 616, 621 (5th Cir. 2003). Finally, the plaintiff, who bears the ultimate burden of persuasion at all times to prove discrimination, must raise a genuine dispute of material fact that the proffered non-discriminatory reason is pretextual. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142–43, 120 S. Ct. 2097 (2000); *Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d 413, 420 (5th Cir. 2006).

   i.  *Prima Facie Case*

Mattress Firm challenges Vann's ability to establish her *prima facie* case for each of her discrimination claims. First, there is no dispute that Vann was a member of each protected class and was qualified for her position. Also, termination unquestionably constitutes an adverse action. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 283 (5th Cir. 2004). Mattress Firm, however, maintains that the two transfers at issue were not adverse employment actions and that Vann cannot establish she was replaced by someone outside of her protected class or treated less favorably than others similarly situated.

An adverse employment action for discrimination claims "include[s] only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007).  In other words, an actionable adverse employment decision must be a "tangible employment action that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 764, 118 S. Ct. 2257 (1998).

A transfer may or may not be the equivalent of a demotion, and thus, qualify as an adverse employment action.  *Alvarado v. Tex. Rangers,* 492 F.3d 605, 613–15 (5th Cir. 2007).  A transfer can constitute an adverse employment action if it "result[s] in a decrease in pay, title, or grade" or "if the new position proves [to be] objectively worse—such as being less prestigious or less interesting or providing less room for advancement." *Id.* at 613; *Pegram*, 361 F.3d at 282.  Whether a transfer to a new position is a functional demotion is an objective inquiry. *Id.* at 283.  Plaintiff's subjective belief that a reassignment is less prestigious or less desirable is insufficient to establish that a transfer is an adverse employment action. *Id.*

Mattress Firm contends that the transfers to the Fry Road and Dairy Ashford locations were not adverse employment decisions.  According to Mattress Firm, the reassignment from Hedwig Village to Fry Road was a lateral transfer.  At Fry Road, Vann remained an assistant store manager, her day-to-day responsibilities were the same, and her benefits did not change.  Moreover, Hedwig Village and Fry Road stores were both classified as large stores with clearance centers.[57]  Thus, Vann's bonus and commission potential were the same.  Vann disputes that this was a lateral transfer

---

[57] Starr Dep. at p. 51.

because she had just recently been demoted to assistant manager prior to the transfer.[58]  Vann also argues that the transfer was objectively a demotion because it affected her sales with established clients at the Hedwig Village store and required a longer commute.

The evidence reveals that the reassignment to the Fry Road location could be considered objectively worse.  There is no dispute that the stores at Hedwig Village and Fry Road were equivalent in size, and Vann's position and job duties remained the same.  However, Vann's transfer to Fry Road occurred more than one year since she had rejoined Hedwig Village–Vann's longest tenure at any Mattress Firm location.[59]  Further, she had achieved "Million Dollar Writer" status at Hedwig Village.[60]  She enjoyed high sales and reasonably contends that she had established a client base over those months.  The sales volumes at each store were also measurably different, and the commission earnings of Vann after her transfer to Fry Road evidence that her income did, in fact, decline.  *See Pegram*, 361 F.3d at 284 (finding unequal potential for bonus or commission pay could objectively be considered a demotion).  While Vann's longer commute does not make the transfer an adverse employment action,[61] her decline in compensation and loss of established customers could objectively be considered a demotion, making the reassignment to Fry Road an adverse action.

Mattress Firm also maintains that the transfer to Dairy Ashford was not a demotion, but rather a promotion because Vann was promoted to store manager and she had greater earning

---

[58]  Vann's demotion occurred in October 2010.  Dkt. 17, Ex. D.  The court does not take her demotion into consideration in this analysis because it occurred at least six months prior to her transfer to Fry Road.  *See* Dkt. 33, Ex. A.

[59]  *Id.*

[60]  *Id.*

[61]  *See Cooper v. United Parcel Serv., Inc.*, 368 F. App'x 469, 474 (5th Cir. 2010) (finding a longer commute, if not unreasonable, does not make a transfer an adverse employment action).

potential based on Dairy Ashford's performance.[62]  Vann disputes that the Dairy Ashford location was performing better than Fry Road.

The court finds that the transfer to Dairy Ashford, likewise, constitutes an adverse action. Mattress Firm concedes that the Dairy Ashford location was a smaller store than Fry Road, which indicates that the annual sales volume was lower and could affect the earning potential of its sales employees.[63]  For 2011, Fry Road's sales were significantly higher than Dairy Ashford.[64]  While Vann was promoted to manager at Dairy Ashford, there is no dispute that the job duties of store manager and assistant store manager varied little, so her technical promotion had no effect on her earning ability.  Due to the disparate income potentials between the stores, Vann has demonstrated a genuine issue of material fact exists as to whether her transfers to Fry Road and Dairy Ashford constituted adverse employment actions.

Mattress Firm also contends that Vann cannot show that others similarly situated were treated more favorably or that she was replaced by someone outside of her protected class. Vann has lodged age, gender, and race discrimination claims.  With respect to each of her timely claims, the evidence shows that Vann was replaced by a young, white female at Fry Road, a young, white male at Dairy Ashford, and a young, white female after her discharge.  Thus, Vann has established, as a black female older than 40, that she was replaced by someone outside of her protected class, except with respect to her gender claims for her transfer to Fry Road and her termination.  In order for Vann's

---

[62]  Brown Dep. at p. 61.

[63]  *Id.* at p. 62.

[64]  Dkt. 33, Ex. A-1 at pp. 18-21.

gender discrimination claims to survive related to her Fry Road transfer and her termination, she must demonstrate that similarly situated males were given preferential treatment.

According to Mattress Firm, plaintiff has failed to identify any similarly situated males who were treated more favorably. Plaintiff generally claims that males were transferred less often or were only reprimanded for policy violations, instead of discharged. To show that persons outside of her protected class were treated more favorably, plaintiff must show that she was treated differently under circumstances "nearly identical" to hers. *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012) (citation omitted). Employment actions are taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. *Id.* Additionally, the conduct committed by plaintiff that caused the adverse employment decision must have been nearly identical to that of the proffered comparator. *Id.* In other words, plaintiff will fail to make out her *prima facie* case if the substantive differences in employment history between the plaintiff and proffered comparator adequately explain the disparate treatment. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001).

Plaintiff, however, need not show that her circumstances were identical to that of the comparator. *Turner*, 675 F.3d at 893. "As the Supreme Court has instructed, the similitude of employee violations may turn on the 'comparable seriousness' of the offenses for which discipline was meted out and not necessarily on how a company codes an infraction under its rules and regulations." *Id.* (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11, 96 S. Ct. 2574 (1976)). The relevant perspective is that of the employer at the time of the adverse employment decision. *Id.*

Vann asserts that she was transferred more often than less qualified, younger, white males and that others outside of her protected class committed serious policy violations without being terminated.  Vann, however, fails to identify specifically any nearly identical comparators such that the court can meaningfully address whether a presumption of discrimination should arise.  *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009) (requiring more than a superficial analysis when determining if the comparator's circumstances are nearly identical to those of plaintiff).  As to her transfer, Vann provides lists of her various replacements, but provides no evidence to the court regarding these employees' disciplinary or work histories with Mattress Firm.  Vann only relies on the personal sales of her comparators to assert that she was more qualified or undeserving of a transfer, but completely ignores the other indicators which drove Mattress Firm's decisions to reassign employees (i.e. store execution, teamwork, handling of customer service issues).  In fact, the evidence does not demonstrate that Vann was treated less favorably, but rather shows that all employees were frequently reassigned to different stores.

With respect to her termination, Vann likewise fails to show that the employees who were not terminated for allegedly more serious policy violations had the same supervisors as Vann with comparable violation histories.  No proffered comparator changed a customer invoice, without the customer's knowledge, and received a customer complaint directed to the District Manager.  The most comparable violations evidenced by the written reprimands presented only establish that the comparators were not managed by the same supervisors who made Vann's adverse employment decisions.[65]  Anything more than a superficial analysis is impossible on the record presented by plaintiff.

---

[65]  Dkt. 33, Ex. F.

17

In sum, Vann has failed to make a *prima facie* showing with respect to her gender discrimination claims based on her transfer to Fry Road and her termination. Left remaining for the court's review, therefore, are Vann's race and age discrimination claims, as well as her claim of gender discrimination for the reassignment to the Dairy Ashford location.

ii.   *Legitimate, Non-Discriminatory Reason*

The burden now shifts to Mattress Firm to articulate a legitimate non-discriminatory reason for the transfer. *Johnson v. Louisiana*, 351 F.3d 616, 621 (5th Cir. 2003). The employer's burden is only one of production, not persuasion. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). Mattress Firm has met its burden by pointing to Vann's performance at the Hedwig Village and Fry Road store locations, as well as the customer complaint leading to her termination. Specifically, Vann was transferred to Fry Road because of her inability to get along with co-workers, and then to Dairy Ashford for poor sales performance after a warning from her District Manager. Lack of teamwork and poor performance are legitimate, non-discriminatory reasons for a transfer. *Shackelford v. Deloitte & Touche, L.L.P.*. 190 F.3d 398, 408 (5th Cir. 1999) (plaintiff's allegedly poor performance and failure to get along with her fellow employees is a legitimate, non-discriminatory justification for her termination). She was ultimately terminated after a customer complained that Vann had charged her a delivery fee after the sale was finalized. Thus, Mattress Firm has adequately proffered legitimate, non-discriminatory reasons for its employment decisions.

iii.   *Pretext*

Vann has the ultimate burden of persuasion to prove that Mattress Firm's articulated reasons for its action were not its true reasons, but rather a pretext for unlawful discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 121 S. Ct. 2093 (2000). Vann claims that

her history of transfers and replacements reflects discriminatory intent on the part of Mattress Firm. She also asserts that Mattress Firm's reason for her termination is incredible because it treated similarly situated employees differently, failed to adhere to its disciplinary policy, and failed to properly investigate the customer complaint that ultimately led to her termination.  Despite the assertions made by Vann, she has not created a genuine issue of material fact as to whether Mattress Firm's legitimate, non-discriminatory reasons for her transfers and termination were pretext.

Mattress Firm maintains that Vann was transferred to Fry Road because she was unable to get along with other sales associates, and she was then transferred to Dairy Ashford when her sales performance did not improve, despite a warning from her District Manager.  Vann relies on her history of transfers and, often times, being replaced by a person outside of her protected class to support her claim of pretext.  While the history of transfers may be considered relevant evidence, Vann has not shown that she was transferred more often or otherwise discriminated against in the form of reassignments.  Rather, the evidence shows that all employees were regularly transferred. For instance, at Dairy Ashford, Vann was not the only employee transferred based on low performance, but three white males were also transferred by the District Manager during that time.[66]

Vann also fails to address Mattress Firm's contention that she inadequately performed her other managerial tasks, including training sales associates, keeping her store clean, and working cooperatively with other team members.  It is undisputed that Vann was an accomplished saleswoman, but Mattress Firm's complaints of poor performance revolved around her discord with other sales associates and her placing her individual sales performance above that of her store.  Vann has failed to rebut Mattress Firm's legitimate, non-discriminatory reasons in this regard.  *Wallace*

---

[66]  Ibrahim Decl. at ¶9.

*v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) ("The plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates.").

Vann also challenges the credibility of Mattress Firm's proffered reason for her termination by arguing that other employees with serious policy violations were not terminated. Vann delineates numerous examples of employees who were written up, instead of fired, for various policy violations, including insubordination, selling used merchandise as new, leaving the store unattended, and failing to come to work.[67]  As discussed previously, the court is ill-equipped to judge Vann's proffered comparators because she has not shown the necessary similarities in circumstances to make a meaningful comparison.  Mattress Firm terminated Vann based on unprofessional and unethical behavior when she altered a customer invoice to reflect a new charge after the sale was final.  Vann admitted that she took such actions,[68] which according to Chris Brown, obviated the need for him to conduct any additional investigation.[69]

Vann argues that she was merely correcting an error and that the customer had agreed to pay the delivery charge; however, in this circuit, "an employer's incorrect belief in the underlying facts—or an improper decision based on those facts—can constitute a legitimate, non-discriminatory reason for termination." *Amezquita v. Beneficial Tex., Inc.*, 264 F. App'x 379, 386 n.19 (5th Cir. 2008) (citing *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005)); *Long v. Eastfield Coll.*, 88 F.3d 300, 306 (5th Cir. 1996) (an employer's decision is protected from Title VII liability if it was made with reasonable belief and in good faith). Because plaintiff admitted she

---

[67]  Dkt. 33, Exs. F, H.

[68]  Vann Dep. at pp. 189-90.

[69]  Brown Dep. at p. 79.

20

changed the customer invoice following the customer complaint, she has failed to show that Mattress Firm did not have a good faith basis for her termination.

Finally, Vann's assertion that Mattress Firm deviated from its disciplinary policy is also not supported by the record and insufficient to support a finding of pretext.  Mattress Firm's employee handbook clearly provides that Mattress Firm's use of a progressive disciplinary procedure is typical before an employee is terminated, however, "exceptions or deviations from the normal procedure may occur whenever the Company deems that circumstances warrant . . . immediate termination."[70] Thus, Vann's purported evidence of discrimination does not raise a fact dispute on the issue of pretext, and her claims of intentional discrimination fail.

## IV.   CONCLUSION

After reviewing the arguments of the parties, the summary judgment record, and the applicable law, Mattress Firm's motion for summary judgment (Dkt. 17) is GRANTED.  Vann's claims against Mattress Firm are **DISMISSED WITH PREJUDICE**.  The court will enter a separate final judgment consistent with this opinion.

It is so **ORDERED**.

Signed at Houston, Texas on September 18, 2014.

_____
Gray H. Miller
United States District Judge

---

[70]  Dkt. 33, Ex. I.

21